IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | No. 1:22-cr-16-CJN-01 |
| | : | |
| BRYAN BUSTOS, | : | |
|    Defendant. | : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

COMES NOW ATTORNEY, Allen H. Orenberg, to respectfully submit this Memorandum in Aid of Sentencing on behalf of Bryan Bustos. There can be no dispute that the Court has a duty to deliver a sentence that is not greater than necessary to comply with sentencing purposes. *See* 18 U.S.C. §3553(a).

When fashioning an appropriate sentence, Mr. Bryan Bustos requests that the Court impose a sentence of twelve (12) of months unsupervised probation coupled with community service, considering:

(1)    His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building;

(2)    His immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity; and

(3)    To avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

Such a sentence is "sufficient, but not greater than necessary" to address the sentencing factors and goals set forth in Title 18 U.S.C. § 3553(a).

## I.     CASE BACKGROUND

On September 21, 2021, a criminal complaint (Doc. 1) was filed in U.S. District Court for the District of Columbia charging Mr. Bryan Bustos with four (4) misdemeanor offenses related to his conduct on January 6, 2021.[1] On November 17, 2021, he was arrested in Long Beach, CA, and presented in Federal Court in the Central District of California. Mr. Bryan Bustos was released by that Court on personal recognizance.

Mr. Bryan Bustos was presented (VTC) in this Court on November 23, 2021, before U.S. Magistrate Judge Robin M. Meriweather, and again he was released on personal recognizance with standard conditions. (Doc. 13) On January 13, 2022, an Information was filed (Doc. 22) charging the same four (4) misdemeanors.

On November 7, 2022, Mr. Bryan Bustos appeared (VTC) before U.S. District Judge Carl J. Nichols and the Court accepted a voluntary guilty plea as to Count Four of the Information: 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building). This particular statute carries a possible penalty of up to six (6) months imprisonment, five (5) years of probation and a fine of up to $5,000.00. As a Class B misdemeanor, the U.S. Sentencing Guidelines do not apply. As part of the plea agreement (Doc. 21), Mr. Bryan Bustos has agreed to $500.00 restitution and a $10.00 special assessment.

---

[1] (Count 1) 18 U.S.C. § 1752(a)(1) (Entering or Remaining in a Restricted Building or Grounds), (Count 2) 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds), (Count 3) 40 U.S.C. § 5401(e)(2)(D) (Disorderly Conduct in a Capitol Building), and (Count 4) 40 U.S.C. § 5401(e)(2)(G) (Parading, Demonstrating or Picketing in a Capitol Building).

It is counsel's understanding that Mr. Bryan Bustos is in compliance with all of his conditions of release.

Sentencing is scheduled for February 15, 2023 at 12:30 p.m. (VTC)

## II.     LEGAL STANDARD

Section 3553 of Title 18 of the United States Code enumerates certain factors a district court is to consider when sentencing a defendant who has been convicted of a federal offense. Primarily, the court shall consider the nature and circumstances of the offense and the history and characteristics of the defendant. *See* 18 U.S.C. § 3553(a). The court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at § 3553(a)(2)(A-D). 18 U.S.C. § 3553(a) sets forth seven factors which a sentencing court must consider:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed to reflect the four primary purposes of sentencing, i.e., retribution, deterrence, incapacitation, and rehabilitation;
> (3) the kinds of sentences available;
> (4) the sentencing range established through application of the sentencing guidelines and the types of sentences available under the guidelines;
> (5) any relevant "policy statements" promulgated by the Commission;
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

A. <u>**Nature and Circumstances Of The Offense**</u>

1. <u>**Pre-January 6, 2021**</u>

"The purpose of the defendant's trip to Washington, D.C. was to protest Congress' certification of the Electoral College." (PSR ¶ 14). To be clear, Mr. Bryan Bustos did not come to Washington, D.C. with the intention of subverting democracy; Mr. Bryan Bustos came to our Nation's Capital to peacefully protest what he believed at that time to be a fraudulent election.

2. <u>**January 6, 2021**</u>

By the time Mr. Bryan Bustos arrived at the U.S. Capitol grounds on January 6, 2021, many of the barriers that had been erected along the perimeter of the building were no longer present. Mr. Bryan Bustos met no resistance in his walk to and inside the Capitol building, through the Columbus Doors on the east side. At approximately 2:40 p.m. Mr. Bryan Bustos and his brother Alexis Bustos (co-defendant) entered the U.S. Capitol building and remained inside for approximately 11 minutes. Most of this time he was in the Rotunda – or close to it – and he left the building through the Rotunda Doors. (PSR ¶ 15)

Mr. Bryan Bustos recalls that while inside the Capitol building, the mood was like other protests in Washington, D.C. – which he had previously seen on TV. People were taking selfies, and for the most part, appeared to be peacefully taking photos, waiving flags, and walking throughout the area. After watching video clips of January 6th after-the-fact, Mr. Bryan Bustos regrets that he was any part of it. Mr. Bryan Bustos did not see or join the violent protesters who assaulted police officers and caused property damage to the U.S. Capitol.

-4-

Mr. Bryan Bustos was not part of a group that either organized activities on January 6th nor does he subscribe to any far-right political views. He had no idea where he was while he was in the Capitol building, was only briefly inside the building, and to this day could not navigate the building.

The government concedes that Mr. Bryan Bustos committed no violent acts and destroyed no property. His actions within the U.S. Capitol have been tracked on the CCTV footage[2] and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, steal property, commit violent acts, or encourage others to do so. Furthermore, Mr. Bryan Bustos did not exercise managerial authority over any other participant, and he was average or minor participant whose conduct was not peripheral to the advancement of the offense.

### 3. Post-January 6, 2021

Mr. Bryan Bustos pled guilty at a pre-trial stage in the proceedings thus saving valuable judicial resources, as well as the resources of the U.S. Attorney's Office. It is noted "During the presentence interview, the defendant agreed with the conduct described in the Statement of Offense as presented to the Court prior to his guilty plea." *See* PSR, ¶ 19.

Mr. Bryan Bustos has endured life-long damage to his reputation. He has been the subject of a number of media accounts lumping him with others that were there on January 6, 2021. None of this will be erased from the internet – it may be

---

[2] Since Mr. Bryan Bustos plead guilty, it is believed the Government has scoured additional CCTV and other video footage in an attempt to "catch" Mr. Bryan Bustos engaging in violence or other disruptive behavior. After several more discovery productions since his plea, there is none.

there forever. His personal character is forever besmirched, and his family will also suffer since they are inextricably intertwined with him.

**B.     History and Personal Characteristics of Mr. Bryan Bustos**

Mr. Bryan Bustos (age 31) was born in Long Beach, CA – where he currently resides and has lived for most of his life. He grew-up in a religious home and it was otherwise a normal and sage family environment. His father is still alive and with whom he enjoys a close relationship. Unfortunately, his mother passed away in 2016 due to pancreatic cancer. He has four siblings and he has good relationships with all.

Mr. Bryan Bustos enjoys drawing portraits and he is also skilled in arts & crafts. He currently works two jobs – as a chef in a steakhouse and as a IHSS caregiver. He graduated high school and he has taken some college courses.

He reports he is in good health (but overweight) and has no mental health history. He does not use recreational or illegal drugs, nor does he have an excessive alcohol consumption issues.

Mr. Bryan Bustos has no criminal history. (PSR ¶¶ 22-27)

He qualified for court-appointed counsel thus, any extraordinary fine imposed by the Court will be a heavy burden on him.

Attached are letters from: (1) Nemecio Bustos (Mother), (2) Jesus Chavez (Friend), (3) Daniel G. Polanco (Employer), (4) Amaryllis Lopez (Employer and (5) Esmeralda Bustos. (Sister) These letters inform the court that Mr. Bustos is a very good family member, a hard-working person, and he is thought as a person of good character and strong moral values.

All of the above personal factors, as well as his law abiding life and his post arrest behavior, demonstrate he is capable of being a productive citizen, which the Court can rely on as a basis to sentence him to a term of probation when it considers the §3553 factors.

### C. General Deterrence – 18 U.S.C. § 3553(a)(2)(B) – To Adequately Deter Others From Criminal Conduct

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the U.S. Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for those involved. Those who would not be deterred by these consequences are likely not deterrable. And, a sentence that leaves a family impoverished when other reasonable alternatives exist would not promote respect for the law. Indeed, unnecessarily harsh sentences imposed upon those who were less culpable will not encourage respect for the law or promote just punishment, but are likely to be counterproductive, and labeled as political posturing. A period of probation does constitute punishment and will deter others as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. The National Institute of Justice, Department of Justice, issued a summary of the current state of empirical research stating that "prison sentences are unlikely to deter future crime," and "increasing the severity of punishment does little to deter crime." U.S. Dep't of

Justice, Office of Justice Programs, Nat'l Inst. of Justice, *Five Things to Know About Deterrence* (July 2014) (relying on Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Justice in America 199 (2013)), available at https://ncjrs.gov/pdffiles1/njj/247350.pdf.

### D. Specific Deterrence – 18 U.S.C. § 3553(a)(2)(C) – To Protect the Public From Further Crimes Of The Defendant

Mr. Bryan Bustos's likelihood of recidivism is very low. He has expressed genuine remorse and contrition, has cooperated fully with law enforcement and he accepted the first plea offer tendered with no hesitation. His acceptance of responsibility was complete and without reservation. Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing,* 34 Crime & Just. 1, 28 (2006)" Three National Academy of Science panels... reached that conclusion, as has every major survey of evidence." *Id*.; See *also* Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and Sentence Severity: An Analysis of Recent Research (1999),* summary available at http://members.lycos.co.uk/lawnet/SENTENCE.PDF. The report, commissioned by the British Home Office, examined penalties in the United States as well as several European Countries. *Id*. at 1. It examined the effects of changes to both the certainty and severity of punishment. *Id*. While significant correlations were found between the certainty of punishment and crime rates, the "correlations between sentence severity and crime rates…were not sufficient to achieve statistical

significance." *Id*. at 2. The report concluded that the "studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1. Given Mr. Bryan Bustos's age (45), and other issues consistent with what is mentioned above, the likelihood of Mr. Bryan Bustos ever re-offending is as close to zero as one might come. A punishment of any jail time in this case is going to have the exact opposite effect than what is in the interest of justice. The alternatives to incarceration make financial sense, conserve bed space for individuals from which society would need greater protection and would serve the ends of justice.

A probationary sentence is further justified in this case when considering his background and history, as well as his sincere and complete remorse, his early and consistent acceptance of responsibility and the lack of a need to further deter him.[3]

## IV.  The Need To Avoid Unwarranted Sentence Disparities

Mr. Bryan Bustos urges this Court to readily contrast his behavior from the egregious conduct of other January 6th defendants. Compared to many other misdemeanor cases which have been filed in this Court, Mr. Bryan Bustos's conduct is among the most peaceful and non-threatening.

As noted herein, the defense is not aware of any evidence that his entry into the U.S. Capitol building was preplanned or coordinated with any extremist or

---

[3] For those in a Criminal History Category I, the recidivism rate is 15.2%. For those who have been employed, the rate is 12.7%; and for those who were ever married, the rate is 9.8%. For those with no history of illicit drug use, the recidivism rate is half those who have a drug history. *See* U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines,* at 29 (May 2004).

organized group. Mr. Bryan Bustos did not incite others to commit acts of violence or destruction. He did not engage in any violence or questionable conduct towards law enforcement. Mr. Bryan Bustos did not destroy or steal any property from the U.S. Capitol building. Fifth, based on the Government's own investigation, He remained in a limited part of the building for eleven five (11) minutes in total. And the defense is not aware of any evidence suggesting that Mr. Bryan Bustos entered into the Senate or House Chambers.

If this Court were to impose a sentence greater than a probationary term, community service, and restitution, it would create an unwarranted sentencing disparity compared to similar cases that have already gone to sentencing in this Court. The following cases are a sampling of January 6th U.S. Capitol breach cases, where the defendant(s) plead to 40 U.S.C. § 5104(e)(2)(G), which resulted in no active prison time:

- *United States v. Eliel Rosa*, 21-cr-00068 (TNM) (Oct.12, 2021) (Sentenced to 12 months probation – Mr. Rosa accepted responsibility early on, did not pre-plan or coordinate activities, and did not go far into the U.S. Capital building.)

- *United States v. Valerie Ehrke*, 21-cr-00097 (PLF) (Sept. 17, 2021) (Sentenced to 36 months probation. She was inside the Capital Building and part of a crowd, but was in the back and was pushed out fairly quickly)

- *United States v. Jordan Stotts,* 21-cr-00272 (TJK) (Nov. 9, 2021) (Sentenced to 24 months probation where defendant shouted at MPD officers and posted non-remorseful comments following January 6th.)

- *United States v. Julia Sizer,* 21-cr-00621-CRC (Government requested 2 months home detention however, the Court imposed 24 months probation. She was inside the Capitol Building for approximately 2 minutes and she recorded events on her cell-phone.)

- *United States v. Jacob Lewis,* 21-cr-0100-CRC (Government requested 2 months home detention however, the Court imposed 12 months probation. Mr. Lewis was inside the Capitol Building for approximately 7 minutes.)

- *United States v. Traci Sunstrum,* 21-cr-00652-CRC (Government requested 14 days incarceration however, the Court imposed 30 days home detention. She was inside the Capitol Building for approximately 20 minutes and on 1/6/2021 she posted a brief message as a "citizen journalist.")

- *United States v. Bryan Ivey,* 21-cr-00267-CRC (Government requested 14 days imprisonment however, the Court imposed 60 days home detention. He was inside the Capitol Building for approximately 35 minutes, wave rioters inside, and took multiple videos, which he later deleted.)

- *United States v. Eric Von Bernewitz,* 21-cr-00307-CRC (Government requested 14 days imprisonment, however the Court imposed 60 days home detention. He (and his brother) was inside the Capitol Building for less than 15 minutes.)

- *United States v. Gary Edwards,* 21-cr-00366-JEB (Government requested 14 days imprisonment however this Court imposed 12 months probation. Mr. Edwards was inside the Capital building for approximately 24 minutes.)

- *United States v. Douglas F. Macrae,* 22-cr-00181-JEB (Government requested 4 months home detention however, this Court imposed 12 months probation. Mr. Macrae was in the Capital building for approximately 3 minutes and he posted comments on social media.)

- *United States v. Caleb Jones,* 21-cr-00321-JEB (Government requested 36 months probation with 3 months of home detention however, this Court imposed 24 months probation with 2 months home confinement. Mr. Jones was inside the Capital building for a short period of time)

- *United States v.* Paula Conlon, 22-171-JMC (Government requested 60 days imprisonment, however the Court imposed 12 months probation. Ms. Conlon was inside the Capital building for approximately 3 minutes, and she posted comments & photos to social media.)

None of this is to suggest that any of these examples, for a conviction of 40 U.S.C. § 5104(e)(2)(G), should have received a sentence of incarceration / home

detention, but only to suggest there is nothing materially different about Mr. Bryan Bustos or his conduct which would justify a sentence of incarceration / home detention. Judges of this district court have sentenced many January 6th misdemeanor cases (for 40 U.S.C. § 5104(e)(2)(G)) to probation or home detention or just a fine. In fact, counsel has recently surveyed cases/sentences when 40 U.S.C. § 5104(e)(2)(G) is the lead count of conviction. (through January 9, 2023).[4] 226 January 6th defendants have been sentenced (following a conviction of 40 U.S.C. § 5104(e)(2)(G)) – 141 sentences (62%) were probation or a period of home detention or a fine, and in 85 sentences (38%) a period of incarceration was imposed.

However the nature and circumstances of those offenses, as well as the history and characteristics of the 85 defendants in the § 5104(e)(2)(G) cases resulting in a period of imprisonment, are based on far more egregious conduct than the conduct of Mr. Bryan Bustos – and therefore are readily distinguished.

Mr. Bryan Bustos was far more cooperative with law enforcement, did not attempt to hide any evidence, did not participate in questionable or violent conduct, and he has not publicly blamed another group for the violence that day. All told, the facts of the offense conduct and characteristics of the defendants who garnered incarceration were starkly different than Mr. Bryan Bustos' conduct and characteristics.

---

[4] *See Exhibit* "Government's Sentencing Table" – Case No. 22-7149-JEB, Doc. 37-1. (01/19/2023)

**CONCLUSION**

Mr. Bryan Bustos respectfully asks the Court to impose a short term of unsupervised probation of twelve (12) months with community service hours largely because: (1) His lack of preparation or planning prior to January 6, 2021, to be part of the U.S. Capitol breach event, and his peaceful, non-destructive and non-violent behavior that day both outside and inside the U.S. Capitol building, (2) his immediate cooperation with law enforcement officers when arrested, as well as his ongoing cooperation and willingness to resolve his case at the earliest opportunity, and (3) to avoid an unwarranted sentencing disparity among similarly situated January 6th defendants.

In the alternative, he asks that the Court consider a short non-custodial sentence with a restriction that he remain in his home except for work and excused absences to go to church and medical appointments. In the event the Court finds a period of incarceration warranted, Mr. Bryan Bustos asks that he be allowed to serve it on weekends, which is what the Court did in *United States v. Johnny Taylor,* 15-cr-76 (BAH).[5]

Imposition of a fine is discretionary, and, defendant respectfully submits, should not be ordered to pay a fine in this case. Defendant's financial condition (discussed herein) is such that he cannot pay any significant (additional) fine. He

---

[5] Furthermore, there is a remarkable cost savings to the taxpayers of the United States if the Court imposes a period of probation rather than a term of incarceration. It is counsel's understanding that the monthly cost of imprisonment is $3,688.00, $2,980.00 for community confinement, and $371.00 monthly for supervision.

will, of course, remit the agreed upon $500.00 restitution and the $10.00 special assessment.

For the foregoing reasons and such other reasons that may appear just and proper, Bryan Bustos respectfully asks this Court to fashion a sentence of unsupervised twelve (12) months probation, with community service hours. This sentence is "sufficient but not greater than necessary" as required by 18 U.S.C. §3553(a). It would be a sentence in the best tradition of federal judicial discretion, which will consider Mr. Bryan Bustos as an individual and account for his unique failings and positive attributes that, in the words of Justice Kennedy "sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Rita v. United States*, 551 U.S. at 364, (Stevens, J. concurring), *citing Koon v. United States*, 116 S.Ct. 2053 (1996).

          Respectfully submitted,

          _____
          Allen H. Orenberg, Bar No. 395519
          The Orenberg Law Firm, P.C.
          12505 Park Potomac Avenue, 6th Floor
          Potomac, Maryland 20854
          Tel. No. 301-984-8005
          Cell Phone No. 301-807-3847
          Fax No. 301-984-8008
          aorenberg@orenberglaw.com

Dated: February 12, 2023